**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re:<br><br>John Knorr and Constance Knorr,<br><br>Debtors. | : | Chapter 11<br>Case No. 25-50338 |
| John Knorr and Constance Knorr<br>Plaintiffs,<br>v.<br>Steven L. Craig<br>4100 MacArthur Blvd., Ste. 100<br>Newport Beach, CA 92660<br><br>and<br><br>GJL Farms, LLC<br>331 3rd Street NW<br>Waucoma, IA 52171<br><br>and<br><br>Gerald J. Lynch, as Trustee of the Gerald J. Lynch Revocable Trust<br>331 3rd Street NW<br>Waucoma, IA 52171<br><br>Defendants. | : | Adv. Pro. No. 25-05011-can |

**PLAINTIFF-DEBTORS' MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT**

Plaintiffs John Knorr and Constance Knorr (the "**Debtors**") respectfully move this Court pursuant to Fed. R. Bankr. P. 7056, incorporating Federal Rule of Civil Procedure 56, for entry of summary judgment in their favor and against Defendant Steven L. Craig ("**Craig**"). The Debtors move for summary judgment on Count I of the Complaint, seeking to avoid Craig's purported security interest in the Debtors' real property under 11 U.S.C. § 544(a)(3).

There is no genuine dispute of material fact. Craig's security interest arising from his Deed of Trust on the Debtors' Andrew County, Missouri real property is avoidable because the recorded Assignment of Deed of Trust identifies "State Financial, LLC" as the assignor, an entity that never appeared in the chain of title. Under Missouri's grantor-grantee recording system, the assignment is undiscoverable by a hypothetical bona fide purchaser searching the Andrew County grantor-grantee index for the actual assignor “State Financial Company, LLC” and is therefore avoidable under § 544(a)(3). Alternatively, the DOT Assignment is void ab initio because “State Financial, LLC” – an entity whose existence even Craig cannot confirm (and who Craig said didn’t have authority to make a UCC filing on State Financial Company, LLC’s behalf) – never held any interest in the Deed of Trust and therefore lacked authority to convey it. Consequently, none of the $3,694,224.91 claim Craig filed against the estate is secured by the Debtors’ real property.

In support of this Motion, the Debtors submit the following Statement of Uncontroverted Material Facts and Suggestions in Support.

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. On June 8, 2015, John Knorr and Constance Knorr executed a Deed of Trust in favor of Morrill & Janes Bank & Trust Co. ("**Morrill**"), encumbering real property located in Andrew County, Missouri. The Deed of Trust was recorded on June 10, 2015, in the Andrew County Recorder's Office at Book 418, Page 434. (A certified copy is attached hereto as Exhibit 1).[1]

2. On October 5, 2017, a UCC-1 Financing Statement was filed with the Missouri Secretary of State identifying Morrill & Janes Bank & Trust Co. as the secured party of record. (A

[1] Debtors have compiled the first page of the certified copy with a true and correct copy of the rest of the document. Debtors can produce for inspection by the Court or Craig the full, stapled certified copy upon request. This applies to Exhibits 4 and 8, as well.

true and correct copy of this document is attached hereto as Exhibit 2;[2] Exhibit 3 (CRAIG_000092-000093).)

3. On January 10, 2019, Morrill executed an Assignment of Deed of Trust assigning the Deed of Trust to State Financial Company, LLC. The Assignment was recorded in the Andrew County Recorder's Office on January 11, 2019, at Book 428, Page 78. (A certified copy of the recorded assignment is attached hereto as Exhibit 4.)

4. On January 18, 2019, a UCC Assignment was filed with the Missouri Secretary of State reflecting the assignment of the secured party interest from Morrill & Janes Bank & Trust Co. to State Financial Company, LLC. (A true and correct copy of this document is attached hereto as Exhibit 5; Exhibit 3 (CRAIG_000092-000093).)

5. On February 29, 2024, State Financial Company, LLC and Craig executed a Loan Assignment Agreement (the "**Loan Assignment Agreement**") whereby State Financial Company, LLC assigned to Craig the Notes and Deed of Trust. The Loan Assignment Agreement correctly identifies the assignor as "State Financial Company, LLC" and is signed by Donald Potter as "Its Member." (Exhibit 6 (CRAIG_000174-000178); Exhibit 7 (Defendant Steven L. Craig's Objections and Answers To Plaintiffs' First Set Of Interrogatories, Response to Interrogatory No. 3.))

6. On February 29, 2024, an Assignment of Deed of Trust was executed purporting to assign the Deed of Trust from "State Financial, LLC" to Craig (the "**DOT Assignment**"). The DOT Assignment was recorded in the Andrew County Recorder's Office on March 4, 2024, at Book 442, Page 3. The cover page of the DOT Assignment identifies the grantor as "STATE FINANCIAL, LLC". (A certified copy of this document is attached hereto as Exhibit 8; Exhibit 9 (Defendant

[2] The Missouri Secretary of State's office does not provide certified copies of the UCC filings, but the Court can take judicial notice of it as a public record, and Craig produced a UCC transaction history that references this document. Together, Debtors believe that sufficient foundation for these documents has been provided. This applies to Exhibits 5, 10, and 11, as well.

Steven L. Craig's Objections and Responses to Plaintiffs' First Request For Admissions ("**RFA**"), Response to RFA No. 1, stating "the subject document speaks for itself".))

7. The body of the DOT Assignment identifies the assignor throughout as "State Financial, LLC" (not "State Financial Company, LLC"). (Exhibit 8; Exhibit 9 (Response to RFA No. 1, stating "the subject document speaks for itself".))

8. The notary block on the DOT Assignment identifies the signer, Donald Potter, as a Member of "State Street Financial, LLC," a third entity name distinct from both "State Financial Company, LLC" and "State Financial, LLC." (Exhibit 8; Exhibit 9 (Response to RFA No. 5, stating "the subject document speaks for itself".))

9. On February 29, 2024, a UCC Financing Statement Amendment was filed with the Missouri Secretary of State purporting to assign the prior secured party's interest to Craig. The Amendment identifies the assignor as "State Financial, LLC" (not "State Financial Company, LLC," which was the secured party of record). (A true and correct copy of this document is attached hereto as Exhibit 10; Exhibit 3 (CRAIG_000092-000093).)

10. Craig stated under oath in response to Interrogatory No. 13 that he "has no knowledge regarding the existence of an entity named 'State Financial, LLC' which was registered or organized in Missouri or elsewhere." (Exhibit 7 (Craig's Answer to Interrogatory No. 13.))

11. In response to RFA No. 2, which asked Craig to admit that "State Financial, LLC" is not the same legal entity as State Financial Company, LLC, Craig stated that "he cannot truthfully admit or deny this Request because he has no affiliation with either 'State Financial, LLC' or 'State Financial Company, LLC.'" (Exhibit 9 (Craig's Response to RFA No. 2.))[3]

---

[3] Interestingly, Craig's response to RFA No. 2 conflicts with his contention in his Answer that the parties to the assignment made a mutual mistake by writing State Financial, LLC instead of State Financial Company, LLC.

12. On November 10, 2025 (forty-nine days after the Debtors' September 22, 2025 petition date), Craig filed a UCC-5 Information Statement (Form UCC5) with the Missouri Secretary of State. The Information Statement characterizes the February 29, 2024 UCC Financing Statement Amendment as a "RECORD FILED BY PERSON NOT ENTITLED TO DO SO." (A true and correct copy of this document is attached hereto as Exhibit 11; Exhibit 3 (CRAIG_000092-000093); Exhibit 9 (Craig's Response to RFA No. 6, stating "the subject document speaks for itself".))

13. Craig stated in response to Interrogatory No. 12 that the Information Statement filed on November 10, 2025 "speaks for itself regarding Craig's reasoning for filing with Missouri's Secretary of State" and that Craig "did not seek relief from the automatic stay prior to filing the Information Statement as it was an administrative filing." (Exhibit 7 (Craig's Answer to Interrogatory No. 12.))

14. The Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 22, 2025. (Case No. 25-50338, Dkt. 1.)

## SUGGESTIONS IN SUPPORT

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant shows the absence of a genuine factual dispute, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, the recorded documents and Craig's own discovery responses (sworn under penalty of perjury) establish that there is no genuine dispute as to any material fact relevant to the avoidance of Craig's purported security interest in the Debtors' real property.

**B. Craig's Deed of Trust Lien Is Avoidable Under § 544(a)(3)**

Under 11 U.S.C. § 544(a)(3), the trustee (or debtor in possession) has the rights and powers of "a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case." This provision permits the avoidance of any real property lien that would not be effective against a hypothetical bona fide purchaser ("**BFP**") as of the petition date.

Craig's Deed of Trust lien is avoidable because the recorded Assignment identifies "State Financial, LLC" as the assignor, an entity that never appeared in the chain of title. Under Missouri's statutory grantor-grantee indexing system, an instrument executed by an entity outside the chain of title is undiscoverable through a standard title examination and therefore provides no constructive notice to a hypothetical bona fide purchaser. Because the assignment is functionally a "wild deed" (*i.e.*, recorded but not discoverable), a hypothetical BFP as of the petition date would take free of Craig's claimed lien, and the Debtors may avoid it under § 544(a)(3).

**1. Missouri's Recording System and Constructive Notice.**

Missouri is a notice-recording jurisdiction, and the mechanism by which Missouri implements this notice regime is the grantor-grantee index. Missouri law requires that "[t]he recorder of each county in this state shall keep in his office a well-bound book or books, to be known as 'The Abstract and Index of Deeds,'" and that "said books shall be divided into two equal parts, the front part to be alphabetically arranged for the names of grantors, and the back part to be alphabetically arranged for the names of grantees." Mo. Rev. Stat. § 59.440. When an instrument is presented for

recording, "the recorder shall enter the same in the names of the grantors and grantees in both parts of the abstract and index of deeds . . . in alphabetical order, in the names of the grantors and grantees." Mo. Rev. Stat. § 59.470. To ensure the index functions as intended, every recordable instrument must designate "[a]ll grantors' names and marital status" and "[a]ll grantees' names" on its first page, Mo. Rev. Stat. § 59.310.2(3)-(4), and Missouri places the burden of accurate designation on the party presenting the instrument for recording – not on the recorder or on subsequent searchers. Missouri's recording statutes thus establish, by their plain terms, a name-based, two-part grantor/grantee index as the statutory mechanism through which the recorder's office organizes and makes discoverable the instruments filed in its office.

Missouri courts have long construed these statutes to hold that constructive notice runs only to instruments discoverable within a party's chain of title as revealed by the grantor-grantee index – not to every instrument recorded anywhere in the county's records. Over a century ago, the Missouri Supreme Court held that "[a] purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within his chain of title, but a deed or instrument lying outside his chain of title imparts no notice to him." *Gross v. Watts*, 206 Mo. 373, 104 S.W. 30, 36 (1907) (*emphasis added*). Missouri courts continue to apply this rule today. *See e.g.*, *RVR Enters., Inc. v. Cinnamon Hill, LLC*, 689 S.W.3d 779 (Mo. Ct. App. 2024).

Federal bankruptcy courts applying Missouri law in the § 544(a)(3) context have relied on this same statutory and judicial framework. *See In re Iowa-Missouri Realty Co.*, 86 B.R. 617, 620-21 (Bankr. W.D. Mo. 1988) (holding that a hypothetical bona fide purchaser searching Missouri's official grantor-grantee index for conveyances affecting the record owner's property would not discover an instrument recorded under the name of an entity outside the chain of title, and that "a filing outside the chain of title appearing in a tract index does not impart constructive notice to the hypothetical bona fide purchaser"); *In re Gresham*, 373 B.R. 914, 921-22 (Bankr. W.D. Mo. 2007)

(recognizing that Missouri law affords constructive notice only from "the content of recorded real estate instruments in the chain of title," and that actual notice is irrelevant to the § 544(a)(3) hypothetical bona fide purchaser analysis).

The facts of *In re Iowa-Missouri Realty* are closely analogous and instructive. There, a creditor recorded a deed of trust executed by the corporate parent of the entity that actually owned the real property at issue; the parent, like "State Financial, LLC" here, was a stranger to the chain of title and had no interest to convey. 86 B.R. at 618-19. The deed of trust was properly indexed in the county's official grantor-grantee index under the parent's name, and it was also recorded in a separate, unofficial tract index the recorder's office happened to maintain. *Id.* The bankruptcy court held that a hypothetical bona fide purchaser checking the official grantor-grantee index for conveyances affecting the actual record owner's property "would not find" the deed of trust, because it appeared only under the name of the stranger to title, and that the instrument therefore "imparts no notice." *Id.* at 620. The court squarely rejected the creditor's argument that the separately maintained tract index should broaden the scope of constructive notice, holding that "Missouri is a chain of title state and accordingly, a filing outside the chain of title appearing in a tract index does not impart constructive notice to the hypothetical bona fide purchaser." *Id.* at 621. The same reasoning controls here: Missouri's official grantor-grantee index – not any tract, geographic, or other supplemental index – defines the scope of constructive notice, and the presence of the DOT Assignment in any index other than the official grantor-grantee index under the correct chain-of-title name is legally irrelevant.

The recorded instruments in this case independently confirm that Andrew County implements this statutory scheme in practice. Every recorded instrument in the Deed of Trust's chain of title bears a standardized cover page identifying the "Grantor(s)" and "Grantee(s)" exactly as required by Mo. Rev. Stat. § 59.310—including the original June 8, 2015 Deed of Trust, which

designates "GRANTOR(S): JOE KNORR AKA JOESPH [*sic*] KNORR[,] JOHN W KNORR AKA JOHN KNORR[,] CONSTANCE J KNORR . . ." and "GRANTEE(S): MORRILL & JANES BANK AND TRUST COMPANY," and states that the cover page is "attached solely for the purpose of complying with the requirements stated in §§ 59.310.2; 59.313.2 RSMo 2001 of the Missouri Recording Act," and the January 10, 2019 Assignment of Deed of Trust to State Financial Company, LLC, which likewise designates "Grantor: MORRILL & JANES BANK AND TRUST COMPANY" and "Grantee: STATE FINANCIAL COMPANY, LLC" under the identical statutory citation. (SUMF ¶¶ 1, 3.) The same Grantor/Grantee cover-page convention appears throughout the chain of title for the Andrew County real property at issue, including the Special Warranty Deeds and other conveyances of record. These recorded documents demonstrate, at the document level, that Andrew County's recording practice implements the statutory Direct (grantor) and Indirect (grantee) indexing scheme mandated by §§ 59.310, 59.440, and 59.470—the very scheme under which the DOT Assignment at issue here was indexed under the incorrect grantor name, as detailed below.

**2. The DOT Assignment Creates an Irreconcilable Break in the Chain of Title.**

The chain of title for the Deed of Trust begins with Morrill & Janes Bank & Trust Co., which obtained its interest through the original June 8, 2015 Deed of Trust. (SUMF ¶ 1) On January 10, 2019, Morrill assigned its interest to State Financial Company, LLC pursuant to a valid Assignment of Deed of Trust recorded at Book 428, Page 78. (SUMF ¶ 3.) <u>But that is where the chain of title ends</u>. The DOT Assignment recorded at Book 442, Page 3 purports to convey the Deed of Trust from "**State Financial, LLC**" to Craig. (SUMF ¶¶ 6-7.) "State Financial, LLC," however, never held any interest in the Deed of Trust or appeared in the chain of title; therefore, it had nothing to convey. The last entity in the chain of title remains "State Financial Company, LLC," and the DOT

Assignment, recorded under the name of a stranger to the title, creates an irreconcilable break in that chain.

The legal consequence of this break is dispositive: because the DOT Assignment is indexed under the grantor name "State Financial, LLC" rather than "State Financial Company, LLC," a hypothetical BFP conducting a standard grantor-grantee index search would never discover it. As explained below, an instrument that cannot be located through the chain of title is "legally invisible" to a hypothetical BFP and may be avoided under § 544(a)(3).

**3. Application of the Strong-Arm Power to the DOT Assignment.**

As established in Section B.1, the hypothetical BFP under § 544(a)(3) possesses only constructive notice of interests discoverable through a standard examination of the county's grantor-grantee index. The question, therefore, is whether a prudent purchaser searching that index as of the September 22, 2025 petition date would have discovered Craig's claimed interest in the Deed of Trust. The undisputed record establishes that the answer is no.

The Andrew County Recorder of Deeds maintains its official grantor-grantee index online at https://andrewmo.icounty.com/search. The Court may take judicial notice of this publicly accessible index pursuant to Fed. R. Evid. 201(b)(2).[4] A search of that index under the grantor name "State Financial Company, LLC" or "State Financial Company" does not return the DOT Assignment, because the instrument is indexed under "State Financial, LLC"—an entity that never appeared in the chain of title.

Debtors' Counsel independently verified this result by conducting a grantor-grantee index search using the Andrew County Recorder's iCounty portal. Searches under both "State Financial

[4] Under Rule 201(b)(2), a court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Company" and "State Financial Company, LLC" as grantor returned no results for the DOT Assignment recorded at Book 442, Page 3. Any competent searcher using the publicly accessible portal would obtain the same result.

Because the DOT Assignment cannot be discovered through a search of the grantor-grantee index, it does not provide constructive notice to a hypothetical BFP. Accordingly, the Debtors, exercising the powers of a hypothetical BFP under § 544(a)(3), may avoid Craig's Deed of Trust lien on the Andrew County real property, rendering any portion of Craig's asserted claim of $3,694,224.91 purportedly secured by that real property unsecured.[5]

**C. Craig's Anticipated Defenses Are Unavailing**

**1. Mutual Mistake / Scrivener's Error.**

Craig asserted in his Answer that "[t]he Complaint fails, in whole or part, because of a mutual mistake or scrivener's error in the allonges to the Notes, and the Assignment of the Deed of Trust" and that "[d]ue to the mutual mistake or scrivener's error, the Allonges and the Assignment of Deed of Trust did not fully identify the name of the grantor, State Financial, LLC" because "[t]he intended grantor was State Financial Company, LLC." (Craig Answer ¶ 3 (Affirmative Defenses), Dkt. 21.) This defense is irrelevant to the § 544 analysis. Section 544 grants the debtor in possession the status of a hypothetical lien creditor or BFP "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a). The hypothetical BFP/lien creditor is a legal fiction vested with no actual knowledge. Mutual mistake and scrivener's error are, at most, grounds for reformation as between the original contracting parties, and reformation does not bind a hypothetical BFP who takes in reliance on the public records rather than the parties' unexpressed intent. *See e.g., In re R & J Constr. Co.*, 43 B.R. 29, 31 (Bankr. E.D. Mo. 1984) (a defective instrument conveying an interest

[5] Debtors reserve the right to further object to Craig's claim if it is rendered unsecured.

in real estate cannot be reformed where reformation would prejudice the rights of a bona fide purchaser, rendering the parties' actual intent regarding the property covered by the instrument immaterial to the trustee's rights under § 544(a)(3)); *In re Iowa-Missouri Realty Co*., 86 B.R. at 621-22 (same). Because the facial defect in the DOT Assignment is the result of the recorded instrument itself rather than the product of any recorder error, and because any reformation of that defect would necessarily operate against a hypothetical BFP's reliance on the public record as it exists, Craig's mutual mistake defense provides no basis to preserve his otherwise-avoidable lien.

Notably, Craig's own Answer admits the factual predicate for the Debtors' claims: Craig does not deny that the DOT Assignment identifies "State Financial, LLC" as the assignor (Craig Answer ¶ 52), or that the notary block identifies Potter as a member of "State Street Financial, LLC" (Craig Answer ¶¶ 34, 37); he merely states that "the written document[s] speak[] for themselves." These non-denials confirm that the documentary defects are undisputed.

**2. Actual Notice / Knowledge of the Debtors.**

Craig has also asserted in his Answer that "based on other documents and dealings with representatives of State Financial Company, LLC, the Knorrs had notice, both constructive and actual, of the transfer of State Financial Company, LLC's secured interest in the properties, and the assignment of that interest because the Allonges and Assignment were a part of a single transaction involving the Knorrs, State Financial Company, LLC, and Craig." (Craig Answer ¶ 3 (Affirmative Defenses), Dkt. 21.) Again, this argument is foreclosed by the plain text of § 544(a), which grants strong-arm powers "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a). The hypothetical lien creditor and hypothetical BFP are legal fictions endowed with *no* actual knowledge. Craig's reliance on "other documents and dealings" to impute knowledge to the hypothetical BFP fundamentally misapprehends the statutory framework: the hypothetical BFP is a legal fiction that possesses only constructive notice from the public records – not actual knowledge

of private transactions or communications. And as explained in detail above, the Debtors had no constructive notice of the assignment.

For purposes of this Motion, it is assumed that the Debtors had actual knowledge of the assignment and the identity of the proper assignor, but this assumption is legally irrelevant to the real property avoidance claim. When invoking § 544(a)(3), the Debtors stand in the shoes of a hypothetical bona fide purchaser, a legal fiction with no actual knowledge, only constructive notice from the public records. The operative question is whether a hypothetical purchaser examining the records as of September 22, 2025 would have found Craig's Deed of Trust lien properly perfected. And for the reasons set forth above, the answer is no: the DOT Assignment is indexed under "State Financial, LLC" rather than the actual chain-of-title holder "State Financial Company, LLC" and is therefore undiscoverable through Missouri's statutory grantor-grantee index, so a hypothetical BFP would take the real property free of Craig's claimed lien.

**3. Equitable Estoppel, Waiver, and Laches.**

Craig has pleaded that "[t]he Knorrs' Complaint is barred, in whole or part, by the equitable theories of estoppel, waiver, unclean hands, or laches" (Craig Answer ¶ 6), and that the Debtors' claims are barred by Craig's "right of setoff and recoupment" (Craig Answer ¶ 4). These defenses fail as a matter of law. Section 544(a) grants the debtor in possession the status of a hypothetical lien creditor or BFP "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a). One of the principal purposes for providing this "ideal creditor" status is to prevent equitable defenses from being raised against the trustee. *See In re Sullivan*, 448 B.R. 852, 857-58 (Bankr. N.D. Ga. 2010) (judicial estoppel unavailable against debtor in possession pursuing § 544(a) claims); *In re I.A. Durbin, Inc.*, 46 B.R. 595, 602 (Bankr. S.D. Fla. 1985) ("The defense of estoppel is not available against the Debtor-in-Possession proceeding under the strong-arm clause of [§] 544(a)."); *In re Brent Explorations, Inc.*, 31 B.R. 745, 749 (Bankr. D. Colo. 1983). *See also*, *Frye v. Farmers*

*& Merchants Bank of Cape*, 561 S.W.2d 392, 395-96 (Mo. Ct. App. 1978). Because the hypothetical BFP is an innocent legal fiction with no actual knowledge, equitable defenses predicated on the Debtors' conduct cannot be imputed to it. Craig's setoff defense is similarly unavailing: setoff rights against the Debtors personally do not defeat a § 544 avoidance action brought for the benefit of all unsecured creditors.

4. **Discovery Through a Private Title Company's Geographical Index Does Not Establish Constructive Notice.**

Debtors expect Craig to argue that the Debtors had constructive knowledge of the assignment because it was discoverable by a title company employing a "geographical index," and the title company in Andrew County that provided an Ownership & Encumbrance Report to Craig and the Debtors (Andrew County Title Ins. Agency & Abstracts, Inc.) discovered the Assignment using that index.

This argument fails as a matter of law. Missouri's constructive-notice regime is defined exclusively by statute (Mo. Rev. Stat. §§ 59.440, 59.470, 442.380, 442.390, and 442.400), and that statutory scheme recognizes only the county recorder's grantor-grantee index as the mechanism through which recorded instruments impart notice. No Missouri statute directs recorders to maintain a tract or geographic index as an official record, and no Missouri appellate decision has held that a title company's proprietary database can substitute for, or supplement, the statutory grantor-grantee index for purposes of constructive notice. A private title company's internal "geographical index," assembled through supplemental means, is neither a public record nor a statutorily recognized index under Missouri law. The deficiency is only compounded here because the index at issue is not even a county-maintained record, but a private company's internal database. In *In re Iowa-Missouri Realty*, the secured creditor argued that its interest, though absent from the official grantor-grantee index under the record owner's name, was nonetheless discoverable because it was recorded in the

county recorder's own separately maintained, unofficial tract index, and should therefore be treated as sufficient constructive notice. 86 B.R. at 621. This Court rejected that argument, holding that "a filing outside the chain of title appearing in a tract index does not impart constructive notice to the hypothetical bona fide purchaser" under Missouri's chain-of-title recording system. *Id*. Craig's reliance on a private title company's proprietary geographical index suffers from the same defect this Court identified in *In re Iowa-Missouri Realty*.

Properly understood, Craig's argument is not a constructive-notice argument at all; it is an actual-notice argument in different clothing, asserting that specific title companies, through diligent investigation, actually located the DOT Assignment. That argument is foreclosed for the same reason Craig's other actual-notice defenses fail (*see supra* Section C.2): Section 544(a) grants the debtor in possession strong-arm powers "without regard to any knowledge of the trustee or of any creditor," 11 U.S.C. § 544(a), and the hypothetical BFP's search is measured by what Missouri's recording statutes require – not by the proprietary capabilities of any particular real-world title company. Because the DOT Assignment is undiscoverable through Missouri's statutory grantor-grantee index, there is no inquiry trigger within that index to which a hypothetical BFP could respond, and Craig cannot bootstrap a duty of inquiry from information that exists only in a private title company's supplemental database, a source the hypothetical BFP, exercising Missouri's statutorily defined search methodology, would never consult.

**5. Discoverability Through the Grantee Index Under Craig's Name Does Not Establish Constructive Notice.**

Craig may also argue that the DOT Assignment was nonetheless discoverable because a search of the Andrew County grantee index under his own name, "Steven L. Craig," would return the instrument. This argument fails for the same fundamental reason as Craig's private-title-company theory addressed above: it inverts the direction in which a hypothetical BFP is required to

search. The chain-of-title search that determines constructive notice under Missouri law runs forward from the names already established in the chain of title – here, Morrill & Janes Bank & Trust Co. and State Financial Company, LLC – not backward from the name of every conceivable future grantee. See Mo. Rev. Stat. §§ 59.440, 59.470 (establishing a two-part index organized by the names of grantors and grantees appearing in recorded instruments); *Gross v. Watts*, 206 Mo. 373, 104 S.W. 30, 36 (1907) (constructive notice runs only to instruments "lying within his chain of title"). A hypothetical BFP examining title as of the petition date has no occasion to search the grantee index for "Craig" because nothing in the chain of title as constituted up to that point identifies Craig as a party whose name should be searched; the grantee index is used only to trace backward from a known claimant to establish the historical chain, not to search prospectively for the name of an assignee whose claimed interest arises from an instrument that itself fails to connect to the chain of title.

Indeed, the fact that the DOT Assignment can be located under Craig's name as grantee only underscores, rather than cures, the defect: the instrument is retrievable solely because a searcher already knows to look for "Craig," which is circular and contrary to how title examinations are actually performed. The dispositive search – the forward grantor-index search under "State Financial Company, LLC" – does not return the DOT Assignment, because it is indexed under the incorrect grantor name "State Financial, LLC." An instrument that is retrievable only under the name of the party asserting the interest, and not under the name of the party actually within the chain of title, is the paradigmatic "wild deed" that Missouri law holds imparts no constructive notice. *Tyger ex rel. Tyger v. Shemwell*, 122 S.W.2d 935, 937 (Mo. 1938). Craig cannot transform an admittedly broken chain of title into a discoverable interest merely by pointing to the fact that a search under his own name, conducted with the benefit of hindsight, would have located the instrument he recorded.

**6. The *Idem Sonans* Doctrine Does Not Cure the Defect.**

Missouri's *idem sonans* statute, Mo. Rev. Stat. § 490.450, provides that a variance between a name alleged and a name proved is not material if the names "sound the same or cannot be easily distinguished when pronounced." This doctrine is inapplicable here for multiple reasons.

First, the distinction between "State Financial, LLC" and "State Financial Company, LLC" is not a mere phonetic variation. The word "Company" is a substantive component of the entity's legal name that distinguishes it as a separate legal entity. The omission of an entire word from a corporate name is not the type of minor spelling variation that *idem sonans* was designed to address. *See Robson v. Thomas*, 55 Mo. 581, 583 (Mo. 1874) (establishing that names are *idem sonans* only "if the attentive ear finds difficulty in distinguishing them when pronounced" and holding "Mathews" and "Mather" not *idem sonans*). The discrepancy between "State Financial, LLC" and "State Financial Company, LLC" is not a minor variation that a title examiner would be expected to bridge; under standard practice, such a gap is treated as a defect in the chain of title, not a minor discrepancy to be overlooked.

Second, Craig himself admits he has no knowledge of any entity named "State Financial, LLC" that was ever registered or organized in Missouri or elsewhere. (SUMF ¶ 10.) If even the assignee cannot confirm the existence of the purported assignor, a hypothetical BFP cannot be charged with notice.

**7. Any Post-Petition Reformation of the Defective Instruments Would Violate the Automatic Stay and Cannot Cure the Defect.**

To the extent Craig might argue that the DOT Assignment or the Allonges should be reformed to correct the "State Financial, LLC" misnomer to "State Financial Company, LLC," any such effort is foreclosed on two independent grounds. First, reformation is unavailable against a hypothetical BFP as a matter of Missouri law. "[A] defective instrument conveying an interest in

real estate cannot be reformed where such reformation would prejudice the rights of a bona fide purchaser for value of that property." *In re R & J Constr. Co.*, 43 B.R. 29, 31 (Bankr. E.D. Mo. 1984) (citing *American Bank v. Bray*, 321 Mo. 576, 11 S.W.2d 1016 (1928)). Because the Debtors, exercising strong-arm powers under § 544(a)(3), assume BFP status as of the petition date, "the actual intent of the [parties] regarding the property to be covered by [the] deed is immaterial," and reformation cannot be used to cure the defect as against the Debtors. *Id.*; *accord In re Iowa-Missouri Realty Co.*, 86 B.R. at 621-22 (Bankr. W.D. Mo. 1988) (reformation unavailable against a debtor in possession exercising § 544(a)(3) powers because "a court of equity will not reform an instrument against a bona fide purchaser," and "[a] defective instrument cannot be reformed if it would prejudice the rights of a bona fide purchaser").

Second, any attempt to reform the DOT Assignment, or otherwise correct the recorded chain of title, after the petition date would independently violate the automatic stay. Section 362(a)(3) stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate," and § 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3), (a)(4). A reformed instrument correcting the identity of the grantor would, in substance, constitute post-petition perfection of Craig's purported lien, because it would transform an instrument that is presently outside the chain of title – and therefore ineffective against the Debtors – into one that is effective against them. As the *Iowa-Missouri Realty* court recognized in rejecting an analogous post-petition reformation request, "to allow post-petition reformation . . . would, in effect, be allowing post-petition perfection of a security interest so it would relate back to the date of the original deed of trust." 86 B.R. at 620. Section 546(b) of the Bankruptcy Code identifies the narrow, specifically enumerated circumstances in which post-petition perfection may relate back to defeat a debtor in possession's intervening rights, and reformation of a defective deed of trust or assignment is not among them. *Id.*; *see* 11 U.S.C. § 546(b)(1). Absent an applicable

relation-back exception, any post-petition act to perfect, or to cure a defect that prevents perfection of, a lien against the Debtors' real property is barred by § 362(a)(4) unless and until the automatic stay is lifted.

### D. Alternative Ground: The DOT Assignment Is Void Ab Initio Because "State Financial, LLC" Lacked Authority to Execute It

Even if the DOT Assignment were discoverable through Missouri's grantor-grantee index, Craig's claimed interest would be avoidable on an independent ground: "State Financial, LLC" lacked authority to execute the instrument because it never held any interest in the Deed of Trust.

The undisputed record shows that State Financial Company, LLC – not "State Financial, LLC" – was the Deed of Trust holder as of February 29, 2024. (SUMF ¶¶ 3-4.) The Loan Assignment Agreement executed that day correctly identifies the assignor as "State Financial Company, LLC." (SUMF ¶ 5.) Yet the DOT Assignment identifies the assignor throughout as "State Financial, LLC," and the notary block identifies the signer as "a Member of State Street Financial, LLC" (a third entity name distinct from both). (SUMF ¶¶ 6-8.)

Craig's own admissions are dispositive. He stated under oath that he "has no knowledge regarding the existence of an entity named 'State Financial, LLC' which was registered or organized in Missouri or elsewhere." (SUMF ¶ 10.) An entity whose existence even the purported assignee cannot confirm cannot convey property rights it does not hold.

Craig's post-petition UCC-5 Information Statement confirms the defect. That filing characterizes the February 29, 2024 UCC Financing Statement Amendment—which purported to assign the secured party interest to Craig—as a "RECORD FILED BY PERSON NOT ENTITLED TO DO SO." (Exhibit 11; SUMF ¶ 12.) Under Missouri's UCC, "[a] filed record is effective only to the extent that it was filed by a person that may file it under section 400.9-509." Mo. Rev. Stat. § 400.9-510(a). Craig's own filing thus concedes that "State Financial, LLC" lacked authority to file

the UCC Amendment. The necessary corollary is that "State Financial, LLC" likewise lacked authority to execute the DOT Assignment: if an entity lacks authority to file a UCC amendment assigning its secured party interest, it necessarily lacks authority to execute a deed of trust assignment conveying that same interest in real property.

*In re Sullivan*, 448 B.R. 852 (Bankr. N.D. Ga. 2010) present is analogous. There, the debtor executed a deed to secure debt on his personal residence in his corporate capacity as president of Sullivan Stone, Inc. – a company that did not own the property. *Id.* at 854. The court held the deed was defective and avoidable under § 544(a)(3), explaining that "[b]ecause Defendant owns the Residence in his individual capacity, by executing the deed in the name of the corporation, Sullivan Stone granted Plaintiff a lien on real property it did not own." *Id.* The same principle applies here: "State Financial, LLC" never held any interest in the Deed of Trust, only State Financial Company, LLC did, and an instrument executed by an entity with no interest in the property is a nullity. The DOT Assignment is void ab initio and cannot serve as the basis for Craig's claimed lien.

**CONCLUSION AND RELIEF REQUESTED**

The undisputed facts establish that Craig's asserted security interest in the Debtors' real property is avoidable as a matter of law on two independent grounds.

First, the recorded Assignment of Deed of Trust identifies "State Financial, LLC" as the assignor—an entity that never appeared in the chain of title. Under Missouri's grantor-grantee recording system, an instrument recorded under a name outside the chain of title is undiscoverable through a standard title examination and provides no constructive notice to a hypothetical bona fide purchaser. Because a search of the Andrew County grantor-grantee index under "State Financial Company, LLC" (the actual chain-of-title holder) does not return the DOT Assignment, the Debtors, exercising the powers of a hypothetical BFP under § 544(a)(3), may avoid Craig's Deed of Trust lien.

Second, and independently, the DOT Assignment is void *ab initio* because “State Financial, LLC” – the entity identified as the assignor – never held any interest in the Deed of Trust and lacked authority to execute the instrument. Craig’s own post-petition UCC-5 Information Statement concedes that “State Financial, LLC” was “NOT ENTITLED” to file the February 29, 2024 UCC Amendment, and Craig has admitted under oath that he has “no knowledge regarding the existence of” State Financial, LLC. An instrument executed by a nonexistent or unauthorized entity conveys nothing and cannot serve as the basis for a valid lien.

Because Craig’s Deed of Trust lien is avoidable under § 544(a)(3), none of Craig’s $3,694,224.91 claim against the estate is secured by the Debtors’ real property.

The Debtors respectfully request summary judgment and an Order:

(a) Avoiding Craig's Deed of Trust lien on the Debtors' Andrew County, Missouri real property under 11 U.S.C. § 544(a)(3), on the ground that such lien is not effective against a hypothetical bona fide purchaser as of the petition date;

(b) Declaring that Craig's claim in this bankruptcy case is unsecured to the extent purportedly secured by the Debtors’ Andrew County, Missouri real property; and

(c) Granting such other and further relief as this Court deems just and proper.

Dated: August 6, 2026

Respectfully submitted,

CONROY BARAN, LLC

/s/ *Robert S. Baran*

Robert S. Baran, MO #50699
Aaron M. Othmer, MO #68305
1316 Saint Louis Ave., 2nd FL
Kansas City, MO 64101
(816) 616-5009
rbaran@conroybaran.com
**ATTORNEYS FOR PLAINTIFFS**

**21-DAY NOTICE**

Any response to this Motion for Summary Judgement must be filed with 21 days of the date of this notice, pursuant to Local rule 9013-1C and 9013-1H, with the Clerk of the United States Bankruptcy Court. Parties represented by an attorney shall file electronically at https://ecf.mowb.uscourts.gov. Pro se parties shall mail filings to: United States Bankruptcy Court, Western District of Missouri, 400 East 9th Street, Room 1510, Kansas City, MO 64106. Pursuant to 9013-1D, responses shall address the merits of the motion and, if applicable, set out actions to remedy the particular problem. The Court will serve such response electronically on the Trustee, debtor's attorney and all other parties to the case who have registered for electronic filing. Respondent shall serve all parties who are not served electronically.

If a response is timely filed, a hearing will be held on a date and time determined by the Court. Notice of such hearing will be provided to all parties in interest. If no response is filed within 21 days, the Court may enter an order.

For information about electronic filing go to www.mow.uscourts.gov or call the Court's HELP line at 1-800-466-9302.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 6, 2026, a true and correct copy of the foregoing Debtors' Motion for Summary Judgment was served electronically on all counsel of record via the Court's CM/ECF system.

/s/ Robert S. Baran
Robert S. Baran