**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **IN RE:** | ) |
| **JOHN W. KNORR AND CONSTANCE KNORR,** | ) **Case No. 25-50338-can11** |
| **Debtors.** | ) |
| **JOHN W. KNORR AND CONSTANCE KNORR,** | ) |
| **Plaintiffs,** | ) |
| **v.** | ) **Adv. No. 25-05011-can** |
| **STEVEN L. CRAIG, et. al.** | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT STEVEN L. CRAIG**

John and Constance Knorr (the "Knorrs") are debtors in a pending subchapter V chapter 11 bankruptcy case.[1] As chapter 11 "debtors in possession," the Knorrs filed this three-count adversary complaint seeking to determine the extent, validity, and priority of certain liens asserted by three separate defendants against the Knorrs' real property located in Savannah, Andrew County, Missouri and to avoid or limit such liens.[2] With respect to Defendant Steven L. Craig specifically, the Knorrs seek to avoid Craig's lien *in toto* on the grounds Craig's secured interest in a deed of trust ("DOT") by way of assignment is defective; or, in the alternative, to limit his lien to the principal amount of the notes under contract, usury, and other theories.[3] The Knorrs seek

[1] This case is related to two other bankruptcy cases filed around the same time: *In re Joseph Knorr*, Case No. 25-50337-can12 and *In re Jill Knorr*, Case No. 26-50075-can7. John and Constance Knorr are the parents of Joseph Knorr, and Jill Knorr is married to Joseph Knorr. The Defendants are also creditors in the other *Knorr* bankruptcy cases. Their names become relevant to the procedural and factual background, as discussed below.
[2] *See* 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights … and powers . . . of a trustee serving in a case under this chapter").
[3] The Knorrs rely upon what they describe as nonstandard language in the loan documents and the language of the future advance provision of the DOT.

partial summary judgment against Craig on the first ground only: that because there was an admitted error in the name of the entity assigning its lien rights to Craig in the documents creating the assignment, the Knorrs may avoid the lien using the powers granted them as hypothetical bona fide purchasers under 11 U.S.C. § 544(a)(3).[4] Craig opposes the motion, arguing that the error in the assignor's name was a scrivener's error, such that genuine factual disputes regarding the assignor's and Craig's intent preclude the granting of summary judgment.[5]

The matter is fully briefed and neither party requested oral argument. For the reasons set forth below, the Court denies the Knorrs' motion for partial summary judgment on Count I against Craig, concluding that there are genuine issues of material fact as to whether Craig's lien pursuant to the DOT is avoidable under § 544(a)(3).[6]

***Procedural Background***

The Knorrs filed their voluntary petition for chapter 11 relief on September 22, 2025. They scheduled ownership of three parcels of real estate (collectively, the "Real Estate"): 10461 State Highway C (claimed as their homestead, valued at $3,000,000); 10801 State Highway C (apparently a quarry, valued at $0); and 120 S. 5th St. (a florist shop, valued at $75,000), subject to Craig's (and other's) liens.[7] Craig filed a motion for relief from stay ("MFR") seeking to foreclose on the Real Estate and other personal property, alleging the Knorrs filed bankruptcy to stop Craig's noticed foreclosure sale.[8] The Knorrs opposed the MFR,[9] asserting that Craig's liens

---

[4] The Knorrs captioned their motion as though it was a full request for summary judgment, but since the motion seeks relief only as to Craig, and only on one of the alternative grounds for relief pled in their adversary complaint, the court views it as a motion for partial summary judgment.
[5] ECF No. 36.
[6] The court announced its intent to issue an order denying summary judgment at a status conference held on Nov. 2, 2026.
[7] ECF No. 31 (main case).
[8] ECF No. 44 (main case).
[9] ECF No. 55 (main case).

were avoidable, as did the U.S. Trustee.[10] In the meantime, the Knorrs objected (the "Claim Objection") to Craig's secured proof of claim filed in the amount $3,694,224.91,[11] disputing the validity of Craig's liens, and subsequently filed this adversary complaint alleging similar grounds. The court consolidated the MFR and adversary proceeding for purposes of discovery and trial;[12] extended the time for Craig to respond to the Claim Objection until after the consolidated trial;[13] and upon the Knorrs' unopposed motion, extended the time for the Knorrs to file their chapter 11 plan to 21 days after these matters are resolved.[14]

***Summary Judgment Standard***[15]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056. The court views the evidence and draws inferences in the light most favorable to the non-movant. *Lambert v. City of Dumas*, 187 F.3d 931, 934 (8th Cir. 1999). Summary judgment is mandatory where a party fails to establish an essential element of its case, where that party will bear the burden of proof at trial. *In re Shahrokhi*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). The movant must show that there is no genuine dispute of material fact *and* that it is entitled to judgment as a matter of law; at that point, the burden shifts to the nonmovant to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 706–07 (citations and internal quotations

[10] ECF No. 58 (main case).
[11] Proof of Claim No. 3-1. Since the filing of this motion, Craig has filed a motion for leave to amend his claim, alleging he made certain calculation errors, requesting the claim be allowed in the amount of $3,701,383.17. ECF No. 144 (main case). That motion is currently pending. For purposes of this motion, determination of the allowed amount of the claim is not necessary.
[12] ECF No. 92 (main case).
[13] ECF No. 93 (main case).
[14] ECF No. 76 (main case).
[15] Neither party questions this court's jurisdiction over the adversary at issue or its authority to hear and determine this motion. *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a), (b)(2)(K); Fed. R. Bankr. P. 7001(b).

omitted). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This means that only disputed facts that could affect the outcome of the suit under the substantive law may preclude the entry of summary judgment. *Id.*

***Facts in the Light Most Favorable to Defendant Craig***

An accurate and complete record of the transactions among the various parties is difficult to glean, since neither party has included all relevant documents in their filings. The court has pieced together, in the light most favorable to Craig, the relevant history, based on a review of the complaint and its exhibits; exhibits to the filings related to the summary judgment motion; the MFR and objection; and Craig's proof of claim.[16]

***The 2015 Loan Transaction***

In 2015, the Knorrs' son, Joseph Knorr, signed a promissory note in the principal amount of $1,331,850 in favor of Morrill & Janes Bank & Trust Co. (the "Bank").[17] The note was secured by a DOT on six tracts of land in Andrew County, granted by the Knorrs and Joseph.[18] According to the Note, the Note was also secured by a security agreement granted by Knorr Farms, LLC, a now apparently defunct entity owned by Joseph and John.[19] According to a later loan assignment

---

[16] The failure to include all relevant documents in the various loan transactions is an independent reason to deny summary judgment, since the court should not be required to hunt and peck to find the relevant information.
[17] Complaint, ¶ 16.
[18] Recall that Craig asserts a lien in all three parcels of real estate scheduled by the Knorrs as their jointly owned property, not co-owned by other parties. The DOT described all six tracts as being commonly known as 10461 State Route C, which is the address the Knorrs assert is their residence on the petition, and which the Knorrs claim as their homestead. The DOT, however, states that Joseph and his parents, the Knorrs, are each granting a lien in their respective undivided one-half interests in Tract 1; all three Knorrs grant a lien in Tract 2; Joseph grants a lien in Tract 3; and the Knorrs grant a lien in Tracts 4, 5, and 6. ECF No. 34, Exh. A. It is thus not clear whether the "commonly known address" of 10461 State Route C is intended to also refer to the other two parcels against which Craig claims a lien; whether there was (or still is) joint ownership of real estate amongst all the Knorrs; and how this might ultimately impact the court's ruling on the MFR, Claim Objection, and this adversary proceeding. Since the court is denying the motion for summary judgment, the court need not resolve it at this stage, particularly since the parties did not address it.
[19] This security agreement is not in the record. Joseph's and John's respective schedules and statements of financial affairs contain minor discrepancies about the existence and ownership of Knorr Farms, LLC, but for purposes of this motion, the court need not resolve it at this stage, since, again, the parties did not address it.

agreement, other documents were executed around the same time, including commercial guaranties by Joseph and John, partial deeds of release, and a UCC filing.[20] No party has challenged the validity of the 2015 loan transaction or the validity of the Bank's liens created by the 2015 loan transaction.

***The 2017 Loan Transaction***

Two years later, in 2017, Knorr Farms, LLC, executed a note in favor of the Bank in the principal amount of $848,574.09.[21] This second note was apparently secured by an agricultural security agreement pursuant to which both Knorr Farms and Joseph granted a security interest in certain property to the Bank. The security agreement is not part of the record in this case, but the Bank timely filed a UCC-1 with the Missouri Secretary of State perfecting its interest in Joseph's equipment and crops.[22] And apparently, both Joseph and John personally guaranteed this second note (collectively, the "Notes").[23] No party has challenged the validity of the 2017 loan transaction or the validity of the Bank's liens created by the 2017 loan transaction. The parties appear to assume that both Notes are cross-collateralized, such that the DOT from the 2015 transaction secured the 2017 loan transaction, which the court shall also assume in the light most favorable to Craig.

***The Bank's 2019 Assignment of the Knorrs' Loans to State Financial Company, LLC***

Approximately two years later, in 2019, the Bank assigned all its rights in both the 2015 and 2017 loan transactions as against Joseph, the Knorrs, and Knorr Farms to an entity known as "State Financial Company, LLC," or "SFC." The Bank effectuated the assignment by a

[20] These documents are referenced on Schedule 1 of the Loan Assignment Agreement, attached as an exhibit to POC 3-1 and Exhibit 6 to the Knorrs' motion for summary judgment.
[21] Complaint, Exh. B.
[22] ECF No. 34, Exh. 2.
[23] ECF No. 34, Exh. 6.

handwritten endorsement, signed by the Bank's Vice President, on both Notes, which reads: "Pay to the Order of [SFC], together with its successors and assigns, without recourse and without representation or warranty, express or implied, except as set forth in that certain Loan Assignment Agreement dated January 10, 2019."[24] An assignment of the original DOT was also recorded in Andrew County, reflecting an assignment of the 2015 DOT to SFC.[25] Likewise, an amended UCC-1 was filed with the Missouri Secretary of State showing the Bank had assigned its security interest in the relevant personal property to SFC. [26] No party has challenged the validity of the Bank's assignment to SFC, or the validity of the liens acquired by SFC as a result of the 2019 assignment.

***2024 SFC Assignment to Craig***

In 2024, SFC – no party disputes – signed a Loan Assignment Agreement assigning its interests in the 2015 and 2017 loan transactions and related documents and interests to Craig, for an undisclosed and confidential consideration.[27] The Loan Assignment Agreement between SFC and Craig correctly identified the assignor as "State Financial Company, LLC" (or, SFC, as the court has previously identified and defined) and is signed by Donald Potter as SFC's "Member."[28]

***Issues with the 2024 Loan Assignment Agreement (the "2024 Assignment")***

The problem in this case, however, involves the other documents the parties executed to effectuate the 2024 Assignment.

The parties recorded an Assignment of Deed of Trust ("2024 DOT Assignment") in Andrew County shortly after execution of the 2024 Assignment. The 2024 DOT Assignment states

[24] Complaint, Exh. A._____.
[25] ECF No. 34, Exh. 4.
[26] ECF No. 34, Exh. 5.
[27] The Loan Assignment Agreement included: (a) a promissory note dated June 8, 2015, from Jospeh William Knorr to Morrill in the amount of $1,331,850.00; (b) a promissory note dated September 13, 2017, from Knorr Farms, LLC to Morrill in the amount of $848,574.09; (c) commercial guaranties dated June 8, 2015, and September 13, 2017, from John Knorr to Morrill; (d) a deed of trust dated June 8, 2015, from Joe Knorr a/k/a Joseph Knorr, John Knorr, and Constance Knorr, as grantors, to Morrill, as lender. ECF No. 36 Addt'l Facts ¶ 5.
[28] ECF No. 36 ¶ 5.

that the grantor is "State Financial, LLC" ("SF") – not the actual assignor entity, SFC.[29] Neither party disputes that SF is a nonexistent entity. The specific assignment language in the 2024 DOT Assignment states that SF – and not the actual assignor entity SFC –assigns its interest in the 2015 DOT and 2019 Assignment to Craig.[30] The notary block on the 2024 DOT Assignment identified the signer, Donald Potter, as a member of yet another nonexistent entity – "State Street Financial, LLC" ("SSF") – again different from the actual assignor SFC or the nonexistent entity SF.[31] The assigned UCC-1 Financing Statement the parties filed with the Missouri Secretary of State as part of this transaction incorrectly identified the assignor as, again, the nonexistent entity, SF.[32] Affixed to the 2015 and 2017 Notes is a typewritten allonge, referencing the Bank's assignment to SF of each Note, respectively. The allonges are signed by Donald Potter, as alleged member of the nonexistent entity, SF.

***Craig Response***

In his response, Craig admits most of the material factual allegations are uncontroverted and submits additional uncontroverted facts surrounding the drafting and execution of the 2024 Assignment documents. Specifically, Craig denies any relationship to or the existence of either SF or SSF and characterizes the name discrepancies contained in the assignment documents as "scrivener's errors."[33] Craig supports the additional uncontroverted facts with two affidavits, the first being that of Nancy Lyle.

Ms. Lyle avers that she is an attorney who represented SFC in the transaction assigning SFC's assignment of its interests to Craig. According to her affidavit, Ms. Lyle states that she

[29] ECF No. 36 ¶ 6.
[30] *Id*.
[31] ECF No. 36 ¶ 8.
[32] ECF No. 36 ¶ 9.
[33] ECF No. 36 ¶¶ 8, 11.

drafted the 2024 Assignment Agreement and 2024 DOT Assignment. Lyle avers that when she drafted the 2024 DOT Assignment, she intended to identify SFC as the assignor. She adds that all parties to the 2024 transaction were not only represented by counsel but also understood and intended SFC to be the assignor.[34] Lyle further avers that the errors were made during the drafting process and that the existence of two different clerical errors in the 2024 DOT Assignment (i.e., the internal inconsistency between the reference to SF and then SSF) shows that this was a clerical drafting error.

Craig also supports his additional uncontroverted facts with a second affidavit by Joseph Morrey. Mr. Morrey avers that he was the attorney who represented Craig in connection with the 2024 Assignment transaction.[35] Like Ms. Lyle, Mr. Morrey's sworn affidavit states that the reference to SF and SSF were scrivener's errors that do not reflect the parties' intent: that SFC, the actual holder of the interests acquired from the Bank, assign those interests to Craig.

***The Knorrs Reply***

In their reply, the Knorrs object to Craig's additional statements or uncontroverted fact, arguing that the court should disregard or strike the Lyle affidavit because Craig failed to identify Lyle as a potential witness in his answers to interrogatories. The court at this stage declines to do so. The Knorrs cannot claim prejudice or unfair surprise, since the Lyle affidavit mirrors the Morrey affidavit. Discovery in this case is still open; the final date for filing dispositive motions has not yet expired; and no trial has been set.[36] Counsel for Craig is reminded, however, of the duty to seasonably supplement answers to interrogatories.

The court will now turn to the merits.

---

[34] ECF No. 36-1, Exh. A.
[35] ECF No. 36-2, Exh. B.
[36] ECF No. 44.

***Discussion***

At the threshold, there are two related but extraneous issues the court must address. The first relates to Craig's actions in filing an amendment to the UCC-1.

***Craig's Postpetition Filing of a UCC-5***

Soon after the Knorrs filed their chapter 11 petition, Craig, without seeking relief from the automatic stay, filed a UCC-5 Information Statement with the Missouri Secretary of State. The Information Statement stated that the February 29, 2024, UCC Financing Statement Amended as a "RECORD FILED BY PERSON NOT ENTITLED TO DO SO," explaining that SFC instead of SF had the authority to file the Amendment.[37] Craig argues in his opposition to the summary judgment motion that he did not need to seek relief from the stay in filing the UCC-5 since the filing was an administrative function intended to correct the assignor's name.

The Knorrs allege in their complaint that Craig's filing violated the automatic stay, but they have not sought relief on these allegations in seeking summary judgment against Craig. If Craig's filing of a postpetition UCC-5 violated the stay, the filing would be void and thus might constitute a failed attempt to reform the chain of title as to who hold liens in personal property, including any personal property that might be related to the Real Estate.[38] The Knorrs do not seek summary judgment on this ground, however. Instead, the Knorrs focus on the DOT Assignment itself, not any of the filed UCCs. As will be discussed in more detail below, the Knorrs argue that the undisputed facts establish that Craig's asserted liens in the Real Estate can be avoided under the strong-arm powers of § 544(a)(3). Thus, whether Craig needed to seek relief from the stay before filing a UCC-5 is not an issue in this motion and the court need not resolve it at this time.

---

[37] ECF No. 1 ¶ 37, ECF No. 36 ¶12.

[38] The parties do not address whether there are growing crops on the Real Estate. More importantly, however, the Knorrs do not address in their summary judgment motion how, even if the filing of the UCC-5 violated the stay, that would impact the issue of whether Craig's liens on the Real Estate are valid.

***Citing of a Hallucinated Case by Knorrs' Counsel***

Craig's counsel alerted the court, in his suggestions in opposition, that the Knorrs' counsel had cited a hallucinated case in support of their motion for partial summary judgment, also alleging, in a footnote, that counsel had previously cited nonexistent cases in a discovery dispute never brought by either party before the court. *See Goins v. Father Flanagan's Boys Home*, No. 8:23-cv-477, 2025 WL 1592038, at *2 (D. Neb. June 5, 2025) (noting that generative artificial intelligence may result in fictional or "hallucinatory" citations).

Shortly after Craig's counsel filed his response to the Knorrs' summary judgment motion, Knorrs' counsel filed a brief response, acknowledging that he used generative artificial intelligence to assist him in drafting his motion for summary judgment, and explaining that he thought he "had taken adequate protection to ensure the accuracy of all statements and citations . . . and had deleted the citation" from his brief.[39] In that filing, Knorrs' counsel apologized, and represented that the mistake would not happen again.

The citation of a hallucinated case is indeed a grave error. The use of AI to draft a pleading without verification of the accuracy of the authorities AI generates, and the citation of hallucinated cases, "presents very serious dangers that are fundamentally incompatible with our justice system predicated on integrity and honesty from parties." *Beard v. Frasier*, No. 1:25-cv-137-CMS 2026 WL 2718252, at *1 (E.D. Mo. Sept. 15, 2026) (internal citations omitted.) There is no doubt that the filing of a brief containing a hallucinated case is a violation of Rule 11. *Id.* (quoting *Mills v City of St. Louis,* No. 4:25-cv-1219-MTS, 2025 WL 3470293, at *1 (E.D. Mo. Dec. 3, 2025)). Serious consequences under Rule 11 as incorporated by Fed. R. Bankr. P. 9011 may be considered, including monetary sanctions and dismissal of the action with prejudice. *Id.*

---

[39] ECF No. 37.

In this case, the court takes note of Knorrs' counsel's prompt acknowledgment, apology, and assurance that this serious oversight will not be repeated, even though counsel failed – as required by applicable ethical rules – to remediate the error by withdrawing the offending pleading and filing an amended and accurate one.

The hallucinated case citation was part of a portion of an argument the court does not consider, since it was made in "anticipation" of arguments that Craig might raise, and thus is wholly irrelevant (as well as non-persuasive), even had counsel cited accurate authority. Craig's counsel has graciously not requested that the court impose Rule 11 sanctions. And even though that would not prevent the court on its own motion from imposing sanctions where warranted, the court weighs that as a factor here. Counsel for the Knorrs is strictly warned that future citations of nonexistent or hallucinated citations will result in Rule 11 and/or other appropriate sanctions.

Returning to the merits.

***The Knorrs' "Wild Deed" Argument***

The Knorrs' principal argument in support of their motion for summary judgment is that, under their § 544(a)(3) strong-arm powers, Craig's liens in their Real Estate should be avoided, since the liens would not be valid as to a bona fide purchaser under applicable Missouri law. Specifically, the Knorrs argue that under the grantor-grantee indexing system established by Missouri statute for the recording of instruments related to real estate,[40] an instrument recorded outside the chain of title by a nonexistent entity would not be discoverable through a standard title examination.[41] The 2024 DOT Assignment, the Knorrs argue, is akin to a "wild deed," such that a purchaser examining the title record regarding the Real Estate would not discover that the Real Estate is encumbered by Craig's liens. *See, e.g.*, *In re Iowa-Missouri Realty Co., Inc.*, 86 B.R. 617

[40] Mo. Rev. Stat. §§ 59.440; 59.470; 59.310.2(3)-(4).
[41] ECF No. 34.

(Bankr. W.D. Mo. 1988) (debtor in possession could avoid a lien granted against its real estate by a parent entity that did not own the property; a party searching the grantor-grantee index would not discover the deed of trust).

The Knorrs therefore argue that the DOT Assignment to Craig would provide no notice to a hypothetical bona fide purchaser and any such purchaser would take free and clear of Craig's lien interest, such that Craig's liens may be avoided using their strong-arm powers.[42] As will be discussed below, Craig disputes the Knorrs' legal analysis.

***11 U.S.C. § 544(a)(3)***

11 U.S.C. § 544(a)(3) governs the Knorrs' use of the strong-arm powers in this case. Section 544(a)(3) provides in relevant part:

> [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – a bona fide purchaser of real property … that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The goal of the strong-arm powers enabled by § 544 is to maximize the estate and equalize the distribution of a debtor's assets among creditors of the same class.[43] Section 544 does so by cutting off unperfected security interests, secret liens, and undisclosed prepetition claims against the debtor's property as of the commencement of the case.[44]

As debtors in possession, the Knorrs indisputably have the power to exercise § 544 strong-arm powers. The Knorrs also have the power to do so, based on the plain language of § 544, regardless of any actual knowledge they may have regarding the 2024 Assignment to Craig. *See*

[42] *See Gross v. Watts*, 104 S.W. Mo. 30, 36 (1907) ("purchaser is bound with constructive notice of all recorded instruments and the recital therein lying within his chain of time; but a deed of trust or instrument lying outside his chain of title imparts no notice to him").
[43] 5 Collier on Bankruptcy, ¶ 544.01 (16th ed.).
[44] *Id*. at ¶ 544.02[1].

*In re Iowa-Missouri Realty Co., Inc.*, 86 B.R. at 619-20 (discussing these elements as the first two considerations in whether § 544(a)(3) strong-arm powers apply). Rather, the issue in this case concerns whether a hypothetical bona fide purchaser of the Knorrs' Real Estate could purchase the Real Estate free and clear of Craig's liens.

State law governs who may be a "bona fide purchaser" and the rights of such a purchaser for purposes of this section. *In re Gresham*, 373 B.R. 914 (Bankr. W.D. Mo. 2007). In Missouri, a bona fide purchaser is defined as "one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith." *Id.* at 921 (citations and internal quotations omitted). Again, two of these requirements – that of the valuable consideration and Craig's good faith – are not in dispute. The issue comes down to that of notice.

The Knorrs argue that, based on the recording of the 2024 DOT Assignment under the name of a nonexistent grantor, a hypothetical bona fide purchaser would have no actual notice of Craig's lien against the Knorrs' Real Estate. At first blush, this argument may seem appealing. The Knorrs overlook, however, that Missouri law considers both actual and constructive notice in determining whether a party may be a bona fide purchaser, and the Knorrs fail in their burden to show, in the light most favorable to Craig, that a hypothetical purchaser would not have had constructive notice of Craig's lien, notwithstanding the error in the grantor's name.

Missouri law recognizes two types of constructive notice: (1) record notice and (2) inquiry notice. *In re Lolley*, 607 B.R. 673, 679 (Bankr. W.D. Mo. 2019). As explained by Judge Fenimore in *Lolley*, "[r]ecord notice emanates from case law and statute. In Missouri, 'a purchaser is charged with constructive notice of everything in prior recorded deeds, which go to make up the chain of title under which he holds.'" *Id.* (cites omitted). Section 442.390 of the Missouri Revised Statutes makes this clear by law:

> Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgages shall be deemed, in law and in equity, to purchase with notice.

In *Lolley*, Judge Fenimore rejected a chapter 7 trustee's attempts under § 544(a)(3) to set aside a recorded deed of trust solely on the basis that the deed of trust contained an incorrect face amount of the indebtedness. Judge Fenimore began his analysis "with the premise that 'Missouri courts are reluctant to invalidate a deed of trust simply because of a scrivener's error.'" *Id*. at 678 (quoting *Gresham*, 373 B.R. at 921). More importantly, the trustee had "record notice" of the deed of trust, since it was properly recorded and in the chain of title. *Id*. at 679. Judge Fenimore thus granted summary judgment in favor of the lien creditor and against the trustee. Given that the trustee was deemed to have record notice under Mo. Rev. Stat. § 442.390, Judge Fenimore did not consider whether the trustee had inquiry notice. *Id*.

For purposes of summary judgment, the court accepts the Knorrs' argument without evidence that the 2024 DOT Assignment, having been recorded between a nonexistent entity grantor and Craig as grantee, would not be in the chain of title, such as to impart statutory record notice upon a bona fide purchaser.

The second type of notice, however, is that of inquiry notice. As explained by Judge Dow in *Gresham*, inquiry notice developed from case law. "Inquiry notice is imparted to a prospective purchaser by facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase." *Gresham*, 373 B.R. at 921-22 (cites omitted). As Judge Dow noted, the law is well settled that one who has notice of a fact which ought to have put him on inquiry, and which he might have discovered by using due diligence, cannot claim as a purchaser without notice. *Id*. at 922 (cites omitted). In other words, "[a]n individual who knows, or should know, about a fact suggesting a problem with the title to his property cannot avoid the problem by burying his head

in the sand." *Id*. (citing *In re Hiseman*, 330 B.R. 251, 256 (Bankr. D. Utah 2005)). In reliance on these authorities, Judge Dow concluded that a deed of trust containing a correct street address, but an erroneous legal description, was nonetheless valid, such that the trustee has a duty to inquire about the error, imparting to him constructive notice of the creditor's interest in the property. Judge Dow thus granted summary judgment in favor of the creditor and against the trustee.

***Application of the Authorities to the 2024 DOT Assignment***

This court found no cases applying Missouri law to a situation in which, although the original DOT and first assignment were valid, there was an error in what Craig calls the "downstream assignment"; the parties cite none. The court does not agree with the Knorrs, however, that this case is similar to the "wild deed" situation the court addressed in *Iowa-Missouri Realty*, where a diligent search of the owner's title would reveal no encumbrances whatsoever since the owner had not granted any deed of trust.

Here, according to exhibits showing the date and page of the recorded instruments, a party searching the chain of title in Andrew County using the grantor-grantee index would find the 2015 DOT the Knorrs granted to the Bank, and the 2019 assignment the Bank granted to SFC. Arguably, the recorded 2024 DOT Assignment from the nonexistent SF to Craig would not be discovered.[45] Contrary to the Knorrs' argument that this "broke" the chain of title, however, it is clear that a reasonably prudent purchaser of the Knorrs' Real Estate, upon finding the unreleased DOT to SFC, would be put on a duty to inquire about what happened to SFC's lien. Such a purchaser could not, in the words of the *Hiseman* case, simply bury his head in the sand and assume the Real Estate was unencumbered. The cases the Knorrs rely on are otherwise distinguishable, since they involve issues with the recording and notice imparted by the first deed of trust or mortgage in the chain of

---

[45] The court did not undertake to perform such a search, and neither party submitted expert testimony as to what such a search would uncover, only argument.

title, and not, as here, Real Estate with a properly recorded and valid DOT and subsequent assignment in the chain of title.[46]

In Craig's response, he cites a case from the Eleventh Circuit, involving a similar "downstream error." The Eleventh Circuit held in *In re Halabi*, 184 F.3d 1335 (11th Cir. 1999), that a trustee's powers under § 544 were limited to avoidance of a transfer of the actual or potential property of the bankruptcy estate; once the original mortgage had been granted and perfected, subsequent assignments between lenders did not involve transfers of "property of the debtor." Indeed, the 2024 Assignment in this case was between SFC on the one hand, and Craig on the other; the Knorrs are not signatories to the assignment documents. The Knorrs in their reply argue that § 544 does not require that there have been a transfer of their property for them to utilize their strong-arm powers, pointing out that § 544 could be read in the alternative as creating two separate powers, e.g., "[t]he trustee shall have . . . the rights and powers of, *or* may avoid any transfer of property of the debtor . . .." (emphasis in original).

If the phrase "rights and powers" does constitute some power that stands alone and does not require a transfer of the Knorrs' property, it is not clear what possessing those stand-alone "rights and powers" would grant the Knorrs in this case, particularly since § 544 is implemented by § 550, which provides remedies only "to the extent a transfer is avoided." On the other hand, the language of § 544(a) is broad, and refers to "any transfer," which is similarly broadly defined in 11 U.S.C. § 101(54). The noted treatise, Collier on Bankruptcy, commenting on § 544's unusual construction, suggests that it is "generally thought that section 544 is limited to the power to avoid prepetition transfers," . . . but "it has been argued that the phrase 'rights and powers' may mean

[46] The Knorrs rely on cases concerning defects in the original conveyance, not in the assignment. *See, e.g.*, *In re Iowa-Missouri Realty Co.*, *supra*; *In re Sullivan*, 448 B.R 852 (Bankr. N.D. Ga. 2010) (defect in original conveyance granting a lien in property it did not own); *In re R & J Constr. Co*., 43 B.R. 29 (Bankr. W.D. Mo. 1984) (defect in original conveyance).

something more." 5 Collier on Bankruptcy ¶ 544.02[5] (16th ed.). Craig did not cross-move for summary judgment arguing that § 544(a)(3) is inapplicable to the 2024 Assignment, however. Given that the court is denying summary judgment, the court need not resolve the issue of statutory interpretation at this stage of the proceeding.[47]

In sum, for purposes of summary judgment, a hypothetical purchaser would have had a duty to inquire about the unleased SFC lien, and thus would have had constructive notice, precluding such purchaser from being a "bona fide" purchaser. Accordingly, in the light most favorable to Craig, there is a disputed issue of fact concerning whether a hypothetical bona fide purchaser would have constructive notice based on a duty to inquire of Craig's interest, precluding summary judgment.

***Scrivener's Error***

In addition, there is a genuine issue of fact as whether the 2024 DOT Assignment contains a scrivener's error that may be reformed.[48] As noted above, in Missouri, courts are reluctant to invalidate a deed of trust simply because of a scrivener's error. *Gresham*, 373 B.R. at 921; *Lolley*, 607 B.R. at 678.

---

[47] Craig likewise argues that Missouri law does not require that downstream assignments of DOTs be recorded. *See Jackson County Mo. ex. rel. v. Nixon v. Merscorp, Inc.*, 915 F. Supp. 2d 1064, 1070 (W.D. Mo. 2013) (no duty to record assignments under Missouri law). *See* Mo. Rev. Stat. § 443. *But see* 6 Mo. Prac., Assignments of Deeds of Trust § 3:261 (3d. ed.) ("The assignment must be recorded in the real property records in each county where the collateral real estate is located in order to be effective against all third parties."). For the same reasons, the court will not resolve this issue at this stage.

[48] The Knorrs respond by asserting that post-petition reformation would violate the automatic stay under § 362(a)(4) because it would transform "an instrument outside the chain of title" into one that is effective. ECF No. 38 p. 23. The Sixth Circuit rejected this same argument, holding that a bank did not violate the automatic stay by recording an assignment of a note and accompanying mortgage after the petition date because the assignment had already occurred even though the endorsement was in blank. *In re Cook*, 457 F.3d 561 (6th Cir. 2006). The Knorrs also do not address that if an instrument is subject to reformation, the effective date relates back to the time the instrument was made. *In re Schutz*, 241 B.R. 646, 651 (Bankr. W.D. Mo. 1999).

A scrivener's error is defined as a drafting error that does not incorporate the true intention of the parties. *Id.* To reform a scrivener's error, the parties must show that a mutual mistake occurred and that the instrument does not incorporate the true prior intent of the parties.[49]

The Knorrs first assert that Craig cannot now argue that the Assignment contained a scrivener's error because Craig disclaimed any knowledge of SF in his interrogatory answer and his UCC-5 filing stated that SF had no authority to file the assignment. ECF No. 34 pp. 19-20. Craig points to the following as evidence, in the light most favorable to him, of a scrivener's error: (1) the nonexistence of any entities named SF or SSF; and (2) the existence of multiple independent typographical errors within a single instrument. Craig argues that these facts taken together create genuine issues of fact as to whether the name discrepancy is a scrivener's error. ECF No. 36 p. 27.

The court agrees with Craig. The Knorrs place too much reliance on Craig's interrogatory answer and UCC-5 filing, overlooking that, in connection with a motion for summary judgment, this court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. In sum, there are disputed questions of fact which may support the finding of a scrivener's error sufficient to support reformation of the 2024 DOT Assignment.[50]

***Conclusion***

It is the burden of the Knorrs as the moving party to establish that there are no material disputed facts and that they are entitled to judgment as a matter of law with respect to the portions

---

[49] *Schutz*, 241 B.R. at 649 (elements of reformation of a deed include: "(1) a preexisting agreement between the parties affected by the proposed reformation that is consistent with the change sought; (2) an assertion that a mistake was made in that the deed did not reflect what had been agreed upon; and (3) an assertion that the mistake was common to both parties."). *But see Singleton v. Singleton*, 659 S.W.3d 336, 343 (Mo. 2023) (when scrivener acts at direction of one party the resulting mistake is "purely unilateral").

[50] This dispute of fact also applies to the Knorrs' alternative argument that even if the DOT assignment was discoverable through the grantor-grantee index, Craig's claimed interest would be avoidable because SF as a nonexistent entity lacked authority to execute the instrument because it never held any interest in the DOT. Note, however, that there is no pending counterclaim or request by Craig to reform the 2024 DOT Assignment.

of Count I of their complaint alleging that Craig's liens should be avoided under § 544(a)(3).[51] They have not met their burden. The motion for summary judgment is thus DENIED without prejudice.

Dated: November 13, 2026

/s/ Cynthia A. Norton
CYNTHIA A. NORTON
United States Chief Bankruptcy Judge

[51] The Knorrs also anticipated certain affirmative defenses raised by Craig in his answer, including estoppel, waiver, unclean hands, laches, set-off, recoupment, and the application of the *idem sonans* doctrine. ECF No. 34 pp. 13-14, 17. Craig, however, did not rely on these defenses in his suggestions in opposition to the motion for partial summary judgment and did not file a cross-motion for summary judgment on these defenses. ECF No. 36.